Slip Op. 07-2

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DUS & DERRICK, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Before: Richard K. Eaton, Judge |
| | : |
| | : Court No. 05-00346 |
| UNITED STATES SECRETARY | : |
| OF AGRICULTURE, | : |
| | : |
| Defendant. | : |

OPINION AND ORDER

[United States Department of Agriculture's final determination
denying plaintiff's application for trade adjustment assistance
remanded.]

Dated: January 8, 2007

*Steven D. Schwinn*, for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*,
Director, Commercial Litigation Branch, Civil Division, United
States Department of Justice; *Jeanne E. Davidson*, Deputy
Director, Commercial Litigation Branch, Civil Division, United
States Department of Justice (*Michael J. Dierberg*), for
defendant.

Eaton, Judge:  This matter is before the court on plaintiff

Dus & Derrick, Inc.'s ("plaintiff" or "Dus & Derrick") motion for

judgment upon the agency record pursuant to USCIT Rule 56.1(a).

By its motion, plaintiff challenges the decision of the Foreign

Agricultural Service of the United States Department of

Agriculture (the "Department") to deny its application under the

Court No. 05-00346                                    Page  2

Trade Adjustment for Farmers program for trade adjustment

assistance ("TAA") pursuant to 19 U.S.C. § 2401e (2002).[1]  *See*

Letter from Ronald Lord, Deputy Director Import Policies and

Program Division to Dus & Derrick, Inc. (Mar. 7, 2005) ("Negative

Determination"), AR[2] at 55; *see generally* Pl.'s Mem. Supp. R.

56.1 Mot. J. Agency R. ("Pl.'s Mem.").  The Department concluded

that because plaintiff's net fishing income for calendar year

2003 was not less than its net income for calendar year 2001,

_____

[1]      As initially adopted, the TAA statute established a
mechanism by which domestic workers, firms and communities
affected adversely by an increase in imports like or directly
competitive with the products they produced could apply to the
United States Department of Labor for a cash payment or other
benefits intended to compensate for economic harm caused by the
increased imports.  *See* Trade Act of 1974, Pub. L. No. 93-618,
§§ 221-250, 251-264, 271-274, 88 Stat. 1978, 2019-40 (1975).  The
law was amended in 2002 to provide similar relief through the
Department of Agriculture for agricultural or farm workers who
were considered "commodity producers."  *See* Trade Act of 2002,
Pub. L. No. 107-210, §§ 141-143, 116 Stat. 933, 946-53 (2002).
By its regulations for this amended provision, the Department of
Agriculture defined a "producer" as a "person who is either an
owner, operator, landlord, tenant, or sharecropper, who shares in
the risk of producing a crop and who is entitled to share in the
crop available for marketing from the farm, or a qualified
fisherman."  7 C.F.R. § 1580.102 (2005).  In other words, farmers
and qualified fishermen are permitted to seek TAA benefits much
like other claimants.  According to the regulations, however, in
order to be a "qualified fisherman," the applicant must be a
"person whose catch competes in the marketplace with like or
directly competitive aquaculture products and report[s] net
fishing income to the Internal Revenue Service."  *Id.*  These
definitions would include Dus & Derrick.  In addition, the 2002
Act contained provisions found in 19 U.S.C. §§ 2401 *et seq.* and
later 19 U.S.C. § 2395, which provides for judicial review of
final determinations made by the Secretary of Agriculture.

[2]      Citations to "AR" refer to the Administrative Record
submitted in this action.

Court No. 05-00346                                          Page  3

plaintiff failed to "meet the net income[3] requirement, in

accordance with [7 C.F.R. § 1580.401(e) (2005)]," and therefore

was ineligible to receive benefits.  Negative Determination, AR

at 55.[4]

     Plaintiff asserts two arguments in support of its request

for remand.  First, in plaintiff's view, the Department's

regulations required a comparison of plaintiff's net income for

2002, not 2001, to that from 2003.  Second, plaintiff contends

that by basing its denial solely on a comparison of the

information contained in line 28 of plaintiff's submitted 2001

---

     [3]     According to the Department's regulations, "net fishing
income" is "net profit or loss, excluding payments under this
part, reported to the Internal Revenue Service for the tax year
that most closely corresponds with the marketing year under
consideration."  7 C.F.R. § 1580.102.

     [4]     The regulatory provision cited as the basis for the
Department's denial of plaintiff's application provides:

          The amount of an adjustment assistance
          payment during a qualifying year shall be
          determined in the same manner as in the
          originating year, except that the average
          national price shall be determined by using
          the 5-marketing-year period used to determine
          the amount of cash benefits for the first
          certification.

7 C.F.R. § 1580.401(e).  This provision applies after the
Department has determined that the producer qualifies for
benefits based on its application under a re-certification, and
all that remains is the amount of benefits to be awarded.  While
it is unclear how the cited regulation provides a basis for the
denial of plaintiff's application, it is clear from the record
that the primary reason for the Department's determination was
plaintiff's failure to demonstrate the required decrease in its
net income.

Court No. 05-00346                                        Page   4

and 2003 Form 1120 tax returns,[5] the Department unreasonably

determined that plaintiff's net fishing income for 2003, the

marketing year,[6] was not less than its net fishing income for

2001, the pre-adjustment year.[7]  *See* Pl.'s Mem. at 9, 11.

Jurisdiction lies with 19 U.S.C. § 2395(c).  For the following

reasons, the Department's Negative Determination is remanded.


                          BACKGROUND

     Plaintiff is a family-owned shrimp fishing company that has

operated its business off the Texas Gulf Coast since the early

1970's.  Plaintiff owns its own shrimp boat and, in addition to

other business-related expenses, regularly incurred maintenance

costs including fuel, new equipment, repairs and labor associated

with the boat.  Plaintiff, for the most part, received a steady

income from its operations.  Its business benefitted from the

price of shrimp being determined primarily by domestic market

forces of supply and demand.  Beginning in 2001, however,

_____

     [5]    Plaintiff filed its tax returns on a calendar year
basis.

     [6]    "Marketing year means the marketing season or year as
defined by National Agriculture Statistic Service (NASS), or a
specific period as proposed by the petitioners and certified by
the Administrator."  7 C.F.R. § 1580.102.  It appears that 2003
is the marketing year for the re-certification of shrimp
producers for benefits.

     [7]    "Pre-adjustment year means the tax year previous to
that associated with the most recent marketing year in the
initial producer petition."  7 C.F.R. § 1580.102.

Court No. 05-00346                                    Page  5

increased shrimp imports caused the domestic price of shrimp to

drop.  *See* Def.'s Resp. Pl.'s Mot. J. Agency R. ("Def.'s Resp.")

at 4.  In October 2003, as a result of the steadily declining

price of U.S. shrimp, the Texas Shrimp Association ("TSA") filed

with the Department a petition on behalf of Texas shrimp

producers (including Dus & Derrick) for TAA certification in

accordance with 19 U.S.C. § 2401a and 7 C.F.R. § 1580.201.[8]  *See*

Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 60,078

(Dep't of Agric. Oct. 21, 2003) (notice).  On November 19, 2003,

after conducting an investigation, the Department found that

increased shrimp imports had contributed importantly "to a

decline in the landed prices of shrimp in Texas by 27.8 percent

during January 2002 through December 2002, when compared with the

previous 5-year average," and granted the petition.  Trade

Adjustment Assistance for Farmers, 68 Fed. Reg. 65,239 (Dep't of

Agric. Nov. 19, 2003) (notice).[9]  The downward trend in domestic

_____

[8]    According to the statute, the petition for
certification is to be filed by "a group of agricultural
commodity producers or by their duly authorized representative."
19 U.S.C. § 2401a(a).  In addition, the regulation provides
instructions as to the required contents of the petition.  *See*
7 C.F.R. § 1580.201(c).

[9]    Where a group of agricultural commodity producers or
its authorized representative files a petition seeking a
certification as eligible to apply for TAA benefits, the
Department will make the certification if the petitioner
establishes:

          (1) that the national average price for the
                                              (continued...)

Court No. 05-00346                                    Page   6

shrimp prices continued and, on November 30, 2004, the

Department, having found that "continued increases in imports of

like or directly competitive products contributed importantly to

a decline in the average landed price of shrimp in Texas by 33.7

percent during the 2003 marketing period (January-December 2003),

compared to the 1997-2001 base period," re-certified the TSA and

its member producers as eligible to apply for TAA benefits.

Trade Adjustment Assistance for Farmers, 69 Fed. Reg. 69,582

(Dep't of Agric. Nov. 30, 2004) (notice).

        In accordance with the statutory scheme, once the TSA

received its certification, plaintiff (one of the agricultural

commodity producers covered by the certification) became eligible

to individually apply for a cash payment.  *See* 19 U.S.C.

§ 2401e(a).

_____

        [9](...continued)
            agricultural commodity, or a class of goods
            within the agricultural commodity, produced
            by the group for the most recent marketing
            year for which the national average price is
            available is less than 80 percent of the
            average of the national average price for
            such agricultural commodity, or such class of
            goods, for the 5 marketing years preceding
            the most recent marketing year; and

            (2) that increases in imports of articles
            like or directly competitive with the
            agricultural commodity, or class of goods
            within the agricultural commodity, produced
            by the group contributed importantly to the
            decline in price described in paragraph (1).

19 U.S.C. § 2401a(c).

Plaintiff did not file for benefits under the original
certification but rather made its application upon re-
certification on January 19, 2005.  *See* Application for TAA for
Individual Producers for Dus & Derrick, Inc. ("Pl.'s
Application"), AR at 1.  In its application, plaintiff certified
that it was entitled to a cash payment in part because its net
fishing income in calendar year 2003 (what the application refers
to as the "crop year") was less than its net fishing income in
calendar year 2002,[10] the year plaintiff understood to be the
pre-adjustment year.  *See* Pl.'s Application, AR at 1 ("I reported
on the applicable federal tax form that my net farm or net
fishing income declined from the petition's pre-adjustment
year."); *see also* 19 U.S.C. § 2401e(a)(1)(C); 7 C.F.R.
§ 1580.301(e)(4).

In support of its application, plaintiff submitted its Form
1120 corporate tax returns for calendar years 2001, 2002 and
2003.  On line 28 of each return, which is entitled "Taxable
income before net operating loss deduction and special
deductions," the following data is provided: (1) for 2001, a net
loss of $17,750.00; (2) for 2002, a net loss of $16,003.00; and
(3) for 2003, a net profit of $9,044.00.  *See* Pl.'s Mem. at Apps.
C, D and E.  While standing on their own these tax forms indicate

---

[10]    The status of 2002 as the pre-adjustment year is one of
the issues in this case.

Court No. 05-00346                                    Page  8

that plaintiff's net income improved in each year, plaintiff
states in its papers that it believed it would be given an
opportunity to demonstrate this was not the case.

In addition, plaintiff understands the language of 7 C.F.R.
§ 1580.102 defining "net fishing income" to require the
Department to at least review the tax returns in their entirety
in order to understand fully the circumstances that led to the
net figures.  *See* Pl.'s Mem. at 11–12.

The Department maintains, however, that such a review is not
mandated by either the TAA statute or the regulations.  *See*
Def.'s Resp. at 14 ("[N]either [the Department]'s regulations nor
the TAA statute require [the Department] to engage in the sort of
ad hoc analysis that Dus & Derrick suggests would have been more
appropriate.").  Thus, without more, the Department compared
plaintiff's net income figure on line 28 of its 2003 Form 1120 to
that reported on line 28 of its 2001 return and, finding that the
2003 amount was not less than the 2001 number, denied plaintiff's
application.  In doing so, the Department used 2003 as the
"marketing year" and 2001 as the "pre-adjustment year."  *See id.*
("[I]n determining whether [plaintiff] qualified for
benefits . . . , [the Department] compared [plaintiff's] net
income as reported to the IRS for 2003 with its net income
reported to the IRS for 2001.  This net income is reflected in
line 28 . . . of [plaintiff's] Form 1120, which was circled by

Court No. 05-00346                                    Page  9

[the Department].").

     On May 6, 2005, plaintiff timely commenced the instant
action asking that this matter be remanded to afford it the
opportunity to explain its net income figures.  *See* Letter from
Wanda F. Walls to Office of the Clerk of the Court (May, 6, 2005)
("Complaint Letter") at 1.  For the following reasons, the
Department's denial of plaintiff's application is remanded.


                         STANDARD OF REVIEW

     When reviewing a final determination by the Department,
"[t]he findings of fact by the . . . [Department] . . . if
supported by substantial evidence, shall be conclusive; but the
court, for good cause shown, may remand the case to [the
Department] to take further evidence, and [the Department] may
thereupon make new or modified findings of fact and may modify
[its] previous action . . . ."  19 U.S.C. § 2395(b); *see also*
*Former Employees of Gateway Country Stores LLC v. Chao*, 30 CIT
__, Slip Op. 06-32 at 7 (Mar. 3, 2006) (not published in the
Federal Supplement).  "Substantial evidence is 'such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'"  *Huaiyin Foreign Trade Corp. (30) v. United*
*States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol.*
*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The existence of
substantial evidence is determined "by considering the record as

a whole, including evidence that supports as well as evidence
that 'fairly detracts from the substantiality of the evidence.'"
*Id.* (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556,
1562 (Fed. Cir. 1984)).

The court reviews whether the Department's determination is
in accordance with law pursuant to "the default standard outlined
in the Administrative Procedure Act."  *Former Employees of Elec.
Data Sys. Corp. v. U.S. Sec'y of Labor*, 28 CIT __, 350 F. Supp.
2d 1282, 1286 (2004) (referencing 5 U.S.C. § 706); *see also
Former Employees of Gateway Country Stores LLC*, 30 CIT at __,
Slip Op. 06-32 at 9; *Former Employees of Rohm & Haas Co. v. Chao*,
27 CIT 116, 122, 246 F. Supp. 2d 1339, 1346 (2004); *Woodrum v.
Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983); *Alaska
Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496-97 (2004).


DISCUSSION

I.   Plaintiff's Individual Agricultural Commodity Producer
     Application for TAA Cash Payments

     A.   Relevant Law

Receipt of TAA benefits by an individual agricultural
commodity producer is the result of a two-step process.  Only the
second step, the application of an individual commodity producer
for TAA benefits, is at issue here.

After a group of producers is certified pursuant to 19
U.S.C. § 2401a, an individual commodity producer is entitled to

Court No. 05-00346                                          Page   11

apply for a cash payment "within 90 days after the date on which

the [Department] makes a determination and issues a certification

of eligibility under section 2401b of this title."  19 U.S.C.

§ 2401e(a)(1).  It is the Department's responsibility to

determine whether the individual producer has satisfied the

statutory requirements to receive a cash payment.  *See id*.[11]

---

[11]    The statutory criteria that must be met in order for an
individual producer to receive a cash payment are as follows:

> (1) Requirements
>
>     Payment of a[n] adjustment assistance
> under this part allowance shall be made to an
> adversely affected agricultural commodity
> producer covered by a certification under
> this part who files an application for such
> assistance within 90 days after the date on
> which the Secretary makes a determination and
> issues a certification of eligibility under
> section 2401b of this title, if the following
> conditions are met:
>
>> (A) The producer submits to the
>> Secretary sufficient information to
>> establish the amount of
>> agricultural commodity covered by
>> the application filed under this
>> subsection that was produced by the
>> producer in the most recent year.
>>
>> (B) The producer certifies that the
>> producer has not received cash
>> benefits under any provision of
>> this subchapter other than this
>> part.
>>
>> (C) The producer's net farm income
>> (as determined by the Secretary)
>> for the most recent year is less
>> than the producer's net farm income

(continued...)

Court No. 05-00346                                    Page  12

     Thus, once the group of producers has carried the burden of

establishing that competitive imports have contributed

importantly to a decline in the industry, an individual producer

is entitled to a cash payment if it can establish, among other

things, that its net income "for the most recent year is less

than [its] net farm income for the latest year in which no

_____

[11](...continued)
          for the latest year in which no
          adjustment assistance was received
          by the producer under this part.

          (D) The producer certifies that the
          producer has met with an Extension
          Service employee or agent to
          obtain, at no cost to the producer,
          information and technical
          assistance that will assist the
          producer in adjusting to import
          competition with respect to the
          adversely affected agricultural
          commodity, including ——

                    (i) information regarding
                    the feasibiity and
                    desirability of
                    substituting 1 or more
                    alternative commodities
                    for the adversely
                    affected commodity; and

                    (ii) technical assistance
                    that will improve the
                    competitiveness of the
                    production and marketing
                    of the adversely affected
                    agricultural commodity by
                    the producer, including
                    yield and marketing
                    improvements.

19 U.S.C. § 2401e(a)(1); *see also* 7 C.F.R. § 1580.301.

Court No. 05-00346                                    Page   13

adjustment assistance was received by the producer . . . ."  19

U.S.C. § 2401e(a)(1)(C).[12]  Here, the Department compared line 28

of plaintiff's Form 1120 for 2003 with the same line from 2001.

Plaintiff insists that in denying its application for a cash

payment, the Department (1) unreasonably interpreted its own

regulations by not using 2002 as the pre-adjustment year; and (2)

failed to fully examine plaintiff's tax returns and did not allow

it to explain the reasons for the apparent increase in its net

income from 2001 to 2002 and 2003.  Thus, the court's task is to

determine whether the law and the facts support the Department's

conclusion that plaintiff does not qualify for TAA benefits.


        B.   The Department's Interpretation of "Pre-Adjustment
             Year"

        Plaintiff's first contention is properly understood as a

_____

        [12]     In its regulations, the Department requires that along
with submitting its application, a producer must also certify
"that net farm or fishing income was less during the producer's
pre-adjustment year" in order to receive benefits.
7 C.F.R. § 1580.301(e)(4).  To comply with this provision, the
Department permits a producer to submit:

             (i) Supporting documentation from a certified
             public accountant or attorney,

             (ii) Relevant documentation and other
             supporting financial data, such as financial
             statements, balance sheets, and reports
             prepared for or provided to the Internal
             Revenue Service or another U.S. Government
             agency.

7 C.F.R. § 1580.301(e)(6).

challenge to the Department's interpretation of its regulation

defining "pre-adjustment year."[13]  *See* Pl.'s Reply Def.'s Resp.

Pl.'s Mot. J. Agency R. ("Pl.'s Reply") at 6.  Specifically,

plaintiff takes issue with the Department's understanding that

the phrase "initial producer petition" used in the regulation's

definition of pre-adjustment year refers to the initial group

petition.  For plaintiff:

> "Initial producer petition" here can only
> refer to the *individual producer's initial
> application for TAA benefits pursuant to* 7
> *C.F.R. § 1580.301*, not, as the defendant
> suggests, the group of producers['] petition
> for TAA pursuant to 7 C.F.R. § 1580.201.
>
> First, the plain language of the regulations
> supports this reading. . . . [T]he
> regulations define "pre-adjustment year" in
> terms of a singular "producer," not a "group
> of producers" or "authorized
> representatives."  Only a "producer"
> (singular) may apply for TAA benefits
> pursuant to 7 C.F.R. § 1580.301 — and only
> after a "group of producers" or "authorized
> representative" applies for certification
> pursuant to 7 C.F.R. § 1580.201 or
> recertification pursuant to 7 C.F.R.
> § 1580.401.  Under the regulations, a
> "producer" (singular) does not apply for
> certification pursuant to 7 C.F.R. § 1580.201
> or recertification pursuant to 7 C.F.R.
> § 1580.401.  Thus, "initial producer
> petition" must refer to *a producer's* initial
> application for TAA benefits pursuant to 7
> C.F.R. § 1580.301.

---

[13]    It is worth noting that plaintiff does "not argue that
the Department's regulations run contrary to the law."  Pl.'s
Mem. at 8.  Rather, plaintiff asserts that "the Department wholly
failed to apply its own regulations properly in this case."  *Id.*
at 9.

Court No. 05-00346                                    Page   15

Pl.'s Reply at 6 (emphasis in original) (footnote omitted).  It

is plaintiff's position, therefore, that the pre-adjustment year

is to be determined by referencing the marketing year proposed by

the individual commodity producer in its application for TAA

benefits, not the year that the group of producers filed their

petition for certification.  *See* 7 C.F.R. § 1580.102 (defining

"pre-adjustment year").

        Plaintiff provides support for its asserted definition of

"pre-adjustment year" by explaining that the word "petition" used

in the regulation does not preclude plaintiff's proffered

interpretation.  *See* Pl.'s Reply at 7.  Plaintiff asserts that

the interpretative weight attributable to the singular form of

the word "producer" far outweighs that attached to the word

"petition."  *See id.*  Thus, according to plaintiff:

>           The use of the term "petition" in the
>           definition of "pre-adjustment year"
>           is undeniably confusing, but when read with its
>           qualifier "producer" (singular) and within
>           the larger context of the regulations as a
>           whole, the plain language of the regulations
>           only supports a reading that "initial
>           producer petition" means *an individual*
>           *producer's initial application for TAA*
>           *benefits pursuant to 7 C.F.R. § 1580.301.*

*Id.* (emphasis in original).

        Finally, plaintiff claims that the Department's

interpretation of "pre-adjustment year" leads to the unintended

comparison of net fishing income from non-consecutive years (here

2001 compared to 2003).  Plaintiff relies on the language of 19

U.S.C. § 2401e(a)(1)(C), which requires the producer to
demonstrate that its net fishing income for "the most recent
year" is less than "the producer's net [fishing] income for the
latest year in which no adjustment assistance was received by the
producer . . . ." Reading the definition of pre-adjustment year
to be the year before that in which an individual producer
applies for TAA benefits, plaintiff contends, would ensure the
comparison of consecutive years that is required by the statute.
Thus, relying on both the statute and the regulations, plaintiff
claims that the Department unreasonably compared plaintiff's net
fishing income from non-consecutive years in denying its
application.

The Department maintains that "2001 is the only year that
could be the pre-adjustment year based upon the clear language of
the applicable regulations." Def.'s Resp. at 8.

> Plaintiff's contention that the pre-
> adjustment year is 2002 is directly contrary
> to the definition of "pre-adjustment year"
> pursuant to 7 C.F.R. § 1580.102. Dus &
> Derrick appears to assume that "pre-
> adjustment" year means the year prior to the
> year in which an individual applicant
> received benefits. This conflicts with [the
> Department]'s definition of pre-adjustment
> year as "the tax year previous to that
> associated with the most recent marketing
> year in the initial producer petition." The
> definition refers to the "initial producer
> petition," which is the initial petition
> filed by the group of producers, in this case
> the [TSA], for certification for [TAA]. It
> does not refer to the individual producer's
> initial application for benefits. The

> applicable statute and regulations clearly
> distinguish between the group's "petition" in
> the first stage of the TAA process, and an
> individual producer's "application" in the
> second stage of the process.

*Id.* at 9 (emphasis in original) (citations omitted).  Based on

its interpretation, the Department contends that it properly used

2001 as the pre-adjustment year because, as the marketing year in

the initial producer petition was 2002, the previous tax year is

2001.

While plaintiff can hardly be faulted for straining to make

sense of the Department's regulations, the court finds that its

efforts are unnecessary.  This is because, at least in the

context of a re-certification, the regulations are not a

permissible interpretation of the statute.

When a court reviews an agency's construction of the statute

which it administers, it uses the familiar two-step process set

forth in *Chevron U.S.A. Inc. v. Natural Resources Defense

Council, Inc.*, 467 U.S. 837, 842-43 (1984).  The first step is to

determine "whether Congress has directly spoken to the precise

question at issue."  *Id.* at 842.  If a plain reading of the

statute clearly reveals the intent of Congress, "that is the end

of the matter; for the court as well as the agency, must give

effect to the unambiguously expressed intent of Congress."  *Id.*

at 842-43.  As applied to the facts of this case, the court must

determine whether Congress has directly addressed the issue of

what years are to be compared by the Department when determining
whether an agricultural commodity producer has satisfied the net
income requirement for the receipt of TAA benefits.  For the
court, the language of 19 U.S.C. § 2401e(a)(1)(C) is clear in its
instruction that consecutive years must be compared when
determining whether a producer has satisfied the net income
requirement.  In addition, the court finds that the statute
requires that the second of the two years to be used for
comparison must be the year prior to that in which the
application is made.  Thus, it is unnecessary to address
*Chevron*'s second step.

    "In determining whether a particular regulation carries out
the congressional mandate in a proper manner, [the court] look[s]
to see whether the regulation harmonizes with the plain language
of the statute, its origin, and its purpose."  *Nat'l Muffler
Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 477 (1979).
Congress provided that an individual producer is entitled to
receive a cash payment only if it demonstrated, among other
things, that its "net farm income (as determined by the
Secretary) for the most recent year is less than [its] net farm
income for the latest year in which no adjustment assistance was
received by the producer . . . ."  19 U.S.C. § 2401e(a)(1)(C).
In promulgating its regulatory scheme, however, the Department
altered the phrase "most recent year" to read the "tax year that

most closely corresponds to the marketing year under

consideration."[14]   7 C.F.R. § 1580.102 (defining "net fishing

income" as "net profit or loss, excluding payments under this

part, reported to the Internal Revenue Service for the tax year

that most closely corresponds with the marketing year under

consideration."); *see also id.* (defining "marketing year" as "the

_____

[14]    Prior to November 1, 2004, the Department's regulations
required a producer to submit, along with its application, a
certification that its net fishing income "for the most recent
tax year" was less than that in the producer's pre-adjustment
year.  7 C.F.R. § 1580.301(e)(4) (2004).  The regulatory scheme
was based on a producer application made "with respect to the
most recent marketing year for which national average prices
[were] available."  Trade Adjustment Assistance for Farmers, 69
Fed. Reg. 63,317, 63,317 (Dep't of Agric. Nov. 1, 2004) (final
rule; technical amendments).  As of November 1, 2004, however,
the Department amended its regulations and replaced the reference
to the "most recent tax year" in 7 C.F.R. § 1580.301(e)(4) with
the phrase "tax year that most closely corresponds with the
marketing year under consideration."  *Id.*  According to the
Department:

> Because national average prices take months
> to be gathered and published by the
> Department, a producer's most recent tax year
> may follow the tax year that most closely
> corresponds with the marketing year being
> considered for TAA.  Therefore, to correct
> this deficiency, § 1580.301(e)(4) is amended
> to delete reference to "the most recent tax
> year".  Consequently producers are required
> to certify that net farm or fishing income
> during the tax year that most closely
> corresponds with the marketing year under
> consideration was less than that during the
> pre-adjustment tax year, in order to receive
> payments.

*Id.*  Thus, in order to facilitate a determination of the amount
of the TAA benefit, the Department altered the statutorily
mandated manner in which eligibility was determined.

marketing season or year as defined by National Agriculture

Statistic Service (NASS), or a specific period as proposed by the

petitioners and certified by the Administrator.").  The

Department further provided that the producer's net income from

the marketing year would be compared to its income from, what the

Department refers to as, the "pre-adjustment year" or "the tax

year previous to that associated with the most recent marketing

year in the *initial producer petition*."  7 C.F.R. § 1580.102

(emphasis added).

While this scheme may comply with the statute where an

application is made following an initial certification, it

violates the statute when applied to an application made upon re-

certification.  This is highlighted by the scenario presented

here.  Dus & Derrick made its application for TAA in 2005.  In

reviewing the company's application, the Department compared its

net income over non-consecutive years, i.e., 2001 and 2003.  The

year 2001 was selected because it is the year immediately

preceding the marketing year used in the initial producer

petition.  The marketing year chosen for comparison, however, was

the marketing year used in the petition for re-certification,

i.e., 2003.  Under these facts, the Department's regulations

would always result in a producer's net income for the marketing

year being compared to 2001.  As a result, if the TSA were to be

re-certified in 2004 and a producer were to apply for benefits in

2005 claiming 2004 as the marketing year, the present definition

of "pre-adjustment year," as interpreted by the Department, would

result in a comparison of that producer's net income from 2004 to

that from 2001.  This comparison is not in keeping with the

language of the statute, which demands that a producer establish

that its net fishing income for the most recent year (in the

example 2004) is less than its net fishing income for the latest

year in which no adjustment assistance was received by the

producer (in the example 2003).[15]  *See* 19 U.S.C.

§ 2401e(a)(1)(C).  Thus, at least with respect to individual

applications for benefits made pursuant to re-certifications, the

court finds that the regulations are not a permissible

interpretation of the statute, which clearly expresses Congress's

intent that consecutive years be compared.

In addition, the court finds that the language of the

statute did not invite the Department to devise an alternative

definition for the phrase "most recent year."  For the court,

that phrase can only refer to the year preceding that of the

application.  The statutory phrase "is less than" clearly

indicates that a comparison is to be made between two years.

Plaintiff was denied benefits based on a comparison between 2003

as the marketing year to 2001 as the pre-adjustment year.  A

---

[15]    The record indicates that Dus & Derrick has never
applied for or received TAA benefits.

Court No. 05-00346                                    Page  22

plain reading of the statute, however, demands that, for an

application made in 2005, net income for 2004[16] (the "most recent

year") must be compared to that earned in 2003 ("the latest year

in which no adjustment assistance was received by the producer").

      Therefore, the court concludes that because the intent of

Congress manifested in 19 U.S.C. § 2401e(a)(1)(C) is clear, the

Department's regulations in the context of a re-certification are

an impermissible interpretation of the statute to the extent that

they: (1) provide for the comparison of non-consecutive years

when determining whether a producer has satisfied the statutory

net income requirement; and (2) provide for a year other than the

"most recent year" as the year selected for the comparison.


      C.    The Department's Reliance Solely on Line 28 of
            Plaintiff's Tax Returns

      The court next addresses the question of the steps the

Department must take in rendering a final determination with

respect to a producer's net income.  In plaintiff's view, the

Department's denial of its application for TAA benefits was not

supported by substantial evidence because the agency did nothing

more than look at one line in plaintiff's tax returns when

determining whether plaintiff had satisfied the net income

---

      [16]    The court recognizes that a tax return for the
preceding year may not be available when the application is made.
Tax returns, however, are not the only means of determining net
income.  *See* 7 C.F.R. § 1580.301(e)(6).

requirement for an award of TAA benefits.  The Department

maintains that because "net income is reflected in line

28 . . . of Dus & Derrick's Form 1120," there was no need to look

further into how those figures were calculated, or to consider

any other evidence relating to net income.  Def.'s Resp. at 14.

The Department does not dispute that it took no other action and,

in fact, argues that no other action is required by law.  *See id.*

at 14-15 ("Contrary to Dus & Derrick's suggestion, [the

Department]'s regulation does not require a consideration of

'profit and loss information,' 'net income data,' or every line

item that makes up Dus & Derrick's tax return.  The regulation

requires only a comparison of net income.").

     Plaintiff asserts that the statute requires the Department

is to "determine" an individual commodity producer's net fishing

income prior to granting or denying an individual application for

a cash payment.  *See* 19 U.S.C. § 2401e(a)(1)(C).  According to

plaintiff, the statutory language does not permit the agency to

make a finding of net fishing income based on a review of a

single line in a producer's tax return.  In fact, it is

plaintiff's position that the Department's interpretation of 19

U.S.C. § 2401e(a)(1)(C) embodied in its definition of net fishing

income under 7 C.F.R. § 1580.102 likewise prohibits the

Department's current one-line-comparison method for determining

net fishing income.  Specifically, plaintiff maintains that the

phrase "net profit or loss . . . reported to the Internal Revenue
Service" included in the definition of "net fishing income" means
that the Department must consider all of a producer's submitted
tax information, including the various factors that went into
calculating the reported numbers.  *See* Pl.'s Mem. at 13.   In
plaintiff's view, the Department's failure to look beyond the one
line in plaintiff's tax returns prevented it from considering
that the deductions in 2001 and 2002 resulted from boat repairs
that were financed from the company's savings and a private loan
from one of the company's shareholders.  That is, plaintiff
argues that the figures contained in line 28 of its 2001 and 2003
Form 1120 tax returns do not tell the whole story.

Plaintiff's position is best expressed in the Complaint
Letter.

> 1) in the year 2001, which sets up the
> controls for future years, the business had
> cash in the bank of $17,000 which was used to
> pay outstanding expenses plus gross sales
> which created the large net losses which in
> turn created the false basis
>
> 2) in the year 2002, stockholder loaned to
> the corporation approximately $16,000 working
> capital to pay outstanding expenses, plus
> gross sales which created another year of
> losses, just not quite as much as 2001 (We
> were also denied pmts for this same reason
> for this year) (mechanical down/time reduced
> sales)
>
> 3) in the year 2003, there was no longer any
> money in the bank and there were no
> stockholder contributions to be made.
> The business had to be conducted entirely

>           from gross sales and with no additional
>           capital sources.  We could spend no more
>           than we made.

Complaint Letter at 2.  Therefore, plaintiff claims that when

determining a producer's net fishing income, the Department must

consider the "many accounting variables which affect the net

income/loss." *Id.*  These facts and this argument are echoed in

the brief filed on plaintiff's behalf by counsel. *See* Pl.'s Mem.

at 13.  Thus, according to plaintiff, the variance between the

net income reported in line 28 of its tax returns should have

triggered a more comprehensive review of the evidence by the

Department in order to determine whether plaintiff was in a worse

financial condition in 2003 than it was in 2001. *See id.* at

15-16.

    The Department contends that its regulations require nothing

more than a comparison of the net income figures as reported to

the Internal Revenue Service on plaintiff's tax returns. *See*

Def.'s Resp. at 14.  As the Department argues:

>           The regulation requires only a comparison of
>           net income.  Although there may be numerous
>           revenue and expense line items that are used
>           in <u>calculating</u> net income, net income is
>           ultimately a number based upon that
>           calculation.  Furthermore, although there may
>           be a variety of ways of calculating net
>           income, depending upon the rules being
>           followed and accounting choices made by the
>           company, [the Department] determined that the
>           net income for purposes of TAA should be "net
>           profit or loss, excluding payments under this
>           part, reported to the Internal Revenue
>           Service . . . ."  7 C.F.R. § 1580.102.

> Therefore, it was appropriate for [the
> Department] to compare Dus & Derrick's net
> income in 2003 with its net income in 2001
> based upon the net income that Dus & Derrick
> reported to the IRS in line 28 of its tax
> returns.

*Id.* at 14-15 (emphasis in original) (footnote omitted).

Support for plaintiff's position can be found in the

decisions of this Court and the Court of Appeals for the Federal

Circuit ("Federal Circuit").  Specifically, this Court has found

that: when examining the documents submitted to it, the

Department has a duty to make a "reasonable inquiry" into the

impact of those documents on a producer's application for

benefits, *see Van Trinh v. U.S. Sec'y of Agric.*, 29 CIT __, __,

395 F. Supp. 2d 1259, 1268 (2005) ("While the Department has

considerable discretion in conducting its investigation of TAA

claims, there exists a threshold requirement of reasonable

inquiry.") (alterations, citations, emphasis and internal

quotation marks omitted); *see also Anderson v. U.S. Sec'y of

Argic.*, 30 CIT __, __, 429 F. Supp. 2d 1352, 1355 (2006) ("The

Department of Agriculture's discretion in conducting its

investigations of TAA claims is prefaced by the existence of a

threshold requirement of reasonable inquiry.") (internal

citations and quotation marks omitted); that it is appropriate to

disregard certain income when determining net income, *see Than

Viet Do & Binh Thi Nguyen v. U.S. Sec'y of Agric.*, 30 CIT __, __,

427 F. Supp. 2d 1224, 1231 (2006) ("Thus, it was reasonable for

Agriculture to define net fishing income as net profit or loss
excluding the gain or loss from the sale of business assets.");
that some kinds of expenses may also be disregarded, *see
Selivanoff v. U.S. Sec'y of Agric.*, 30 CIT __,__, Slip Op. 06-55
at 8 (Apr. 18, 2006) (not published in the Federal Supplement)
(remanding the Department's denial of plaintiff's application to
determine whether "extraordinary" expenses had been reported as
net income); that the determination should take into account
different accounting methods, *see Anderson v. U.S. Sec'y of
Agric.*, 30 CIT __, __, Slip Op. 06-161 at 21 (Nov. 1, 2006)
(remanding the Department's denial of plaintiff's application and
instructing the agency to consider "the reasonableness of its
regulation as applied to [the plaintiff], in view of the
differences in cash versus accrual accounting"); *Anderson v. U.S.
Sec'y of Agric.*, 30 CIT __, Slip Op. 06-186 (Dec. 20, 2006) (not
published in the Federal Supplement); and that the Department
cannot simply compare one line of a producer's tax return when
determining net fishing income, *see Lady Kim T. Inc. v. U.S.
Sec'y of Agric.*, 30 CIT __,__, Slip Op. 06-183 at 14-15 (Dec. 15,
2006) (not published in the Federal Supplement) (remanding the
Department's denial of a producer's application for benefits with
instructions for the agency to explain the reasons behind its
negative determination).

    In addition, the Federal Circuit has indicated that the

Department's determination should include an examination of
documents other than a producer's tax returns.  *See Steen v.
United States*, 468 F.3d 1357, 1360-61, 1363 (Fed. Cir. 2006)
(holding that "net farm income," when applied to a producer in
the fishing industry, means net income from all fishing activity,
not just that income from a particular commodity; and further
providing that "the regulations make it reasonably clear that the
determination of . . . net fishing income is not to be made
solely on the basis of tax return information if other
information is relevant to determining the producer's net income
from all . . . fishing sources.").

      Further support for this view is found in the Department's
own regulations.  Under 7 C.F.R. § 1580.301(e)(6), a producer is
allowed to support its claim that its net income has diminished
by providing the Department with other documents besides its tax
returns.  Specifically, a producer may submit balance sheets,
financial statements or "documentation from a certified public
accountant or attorney."  7 C.F.R. § 1580.301(e)(6).  Thus, the
agency may not rely solely on the information contained in
plaintiff's tax return when other information is available.

      It is not clear what effect, if any, a more complete
analysis of plaintiff's submitted net income data will have on
the ultimate determination; however on remand, plaintiff shall be
given an opportunity to submit information as provided in 7

Court No. 05-00346                                         Page   29

C.F.R. § 1580.301(e)(6).  The Department is instructed to take

that information into account when making its final determination

and explain how, if at all, it affects that determination.


CONCLUSION

Because the regulations at issue here govern situations

other than those presented by the facts of this case, the court

will not order their vacatur.  *See Allied-Signal, Inc. v. U.S.

Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).

Rather, on remand, the Department shall: (1) construct a

methodology for considering a producer's application pursuant to

a re-certification that comports with this opinion; (2) inform

plaintiff of the methodology and give it an opportunity to place

on the record any further documentation in accordance with 7

C.F.R. § 1580.301(e)(6); and (3) fully explain its methodology

and reasons for reaching its final determination with respect to

plaintiff's application.  Remand results are due May 8, 2007.

Comments to the remand results are due June 7, 2007.  Replies to

such comments are due June 19, 2007.


                                    /s/Richard K. Eaton
                                    Richard K. Eaton


Dated: January 8, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk